UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

JASON COPE, IZAK ZIRK DE MAISON (F/K/A IZAK ZIRK ENGELBRECHT), GREGORY GOLDSTEIN, STEPHEN WILSHINSKY, TALMAN HARRIS, WILLIAM SCHOLANDER, JACK TAGLIEFERRO, VICTOR ALFAYA, JUSTIN ESPOSITO, KONA JONES BARBERA, LOUIS MASTROMATTEO, ANGELIQUE DE MAISON, TRISH MALONE, KIERAN T. KUHN, PETER VOUTSAS, RONALD LOSHIN, GEPCO, LTD., SUNATCO LTD., SUPRAFIN LTD., WORLDBRIDGE PARTNERS, TRAVERSE INTERNATIONAL, and SMALL CAP RESOURCE CORP.,

                              Defendants,

And

ANGELIQUE DE MAISON,
                              Relief Defendant.

14 Civ. 7575 (DLC)

**DECLARATION OF JOHN O. ENRIGHT IN SUPPORT OF
PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
APPLICATION FOR AN ORDER TO SHOW CAUSE AS TO
WHY DEFAULT JUDGMENTS SHOULD NOT BE ENTERED
AGAINST DEFENDANTS TALMAN HARRIS, WILLIAM SCHOLANDER,
<u>VICTOR ALFAYA, AND KONA JONES BARBERA</u>**

I, John O. Enright, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am employed as Counsel in the Division of Enforcement of the Securities and Exchange Commission ("Commission"), the Plaintiff in this action. I am a member of the bar of this Court.

2. I submit this declaration in support of the Commission's Application for an Order to Show Cause as to Why Default Judgments Should Not be Entered Against Defendants Talman Harris ("Harris"), William Scholander ("Scholander"), Victor Alfaya ("Alfaya"), and Kona Jones Barbera ("Barbera") (together, the "Defaulting Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2), Local Rule 55.2(b), and the Court's Individual Rules of Practice in Civil Cases. I am fully familiar with the facts and circumstances herein. The headings below correspond to the information required by the Court in its Default Judgment Procedure, which is set forth as Attachment A to the Court's Individual Rules of Practice in Civil Cases.

**The Basis for Entering Default Judgments and the Procedural History Beyond Service of the Summons and Complaint**

3. On June 15, 2015, the Commission filed the Amended Complaint against, *inter alia*, Harris, Scholander, Alfaya, and Barbera. A true and correct copy of the Commission's Amended Complaint is attached hereto as Exhibit 1.

4. After filing the Amended Complaint, the Clerk issued summonses to these Defaulting Defendants. A true and correct copy of the summons to Harris is attached hereto as Exhibit 2. A true and correct copy of the summons to Scholander is attached hereto as Exhibit 3. A true and correct copy of the summons to Alfaya is attached hereto as Exhibit 4. A true and correct copy of the summons to Barbera is attached hereto as Exhibit 5.

5. On September 10, 2015, the Commission served the Summons and Amended Complaint on Harris. On October 2, 2015, the Commission filed an affidavit from its process server attesting to the fact that it had served Harris. A true and correct copy of the affidavit of service of the Summons and Amended Complaint on Harris is attached hereto as Exhibit 6.

6. On August 3, 2015, the Commission served the Summons and Amended Complaint on Scholander. On October 2, 2015, the Commission filed an affidavit from its

process server attesting to the fact that it had served Scholander. A true and correct copy of the affidavit of service of the Summons and Amended Complaint on Scholander is attached hereto as Exhibit 7.

7. On August 28, 2015, the Commission served the Summons and Amended Complaint on Alfaya. On October 1, 2015, the Commission filed an affidavit from its process server attesting to the fact that it had served Alfaya. A true and correct copy of the affidavit of service of the Summons and Amended Complaint on Alfaya is attached hereto as Exhibit 8.

8. On September 19, 2015, the Commission served the Summons and Amended Complaint on Barbera. On October 1, 2015, the Commission filed an affidavit from its process server attesting to the fact that it had served Barbera. A true and correct copy of the affidavit of service of the Summons and Amended Complaint on Barbera is attached hereto as Exhibit 9.

9. Harris has neither served nor filed an answer or other responsive pleading in this case, or otherwise responded to the Amended Complaint in any way, and his time to do so has passed under Federal Rule of Civil Procedure 12(a)(l)(A)(i). Accordingly, on December 14, 2015, the Clerk of the Court issued a Certificate of Default as to Harris (Docket # 190). Attached as Exhibit 10 is a true and correct copy of the Certificate of Default as to Harris.

10. Scholander has neither served nor filed an answer or other responsive pleading in this case, or otherwise responded to the Amended Complaint in any way, and his time to do so has passed under Federal Rule of Civil Procedure 12(a)(l)(A)(i). Accordingly, on December 14, 2015, the Clerk of the Court issued a Certificate of Default as to Scholander (Docket # 194). Attached as Exhibit 11 is a true and correct copy of the Certificate of Default as to Scholander.

11. Alfaya has neither served nor filed an answer or other responsive pleading in this case, or otherwise responded to the Amended Complaint in any way, and his time to do so has

passed under Federal Rule of Civil Procedure 12(a)(l)(A)(i). Accordingly, on December 14, 2015, the Clerk of the Court issued a Certificate of Default as to Alfaya (Docket # 193). Attached as Exhibit 12 is a true and correct copy of the Certificate of Default as to Alfaya.

12. Barbera has neither served nor filed an answer or other responsive pleading in this case, or otherwise responded to the Amended Complaint in any way, and his time to do so has passed under Federal Rule of Civil Procedure 12(a)(l)(A)(i). Accordingly, on December 14, 2015, the Clerk of the Court issued a Certificate of Default as to Barbera (Docket # 192). Attached as Exhibit 13 is a true and correct copy of the Certificate of Default as to Barbera.

13. The Commission has made numerous attempts to contact each of the Defaulting Defendants, either directly or through counsel, regarding this proceeding. The Commission has advised them that since they have not answered or otherwise defended this action, they are at risk of being defaulted. Those efforts have proven unavailing. In addition, none of the Defaulting Defendants is an infant, in the military, or incompetent.

**The Proposed Relief Sought by the Commission and the Basis for Each Element of Relief**

14. Along with this declaration, the Commission has filed a Memorandum of Law in Support of its Application for an Order to Show Cause as to Why Default Judgments Should Not be Entered Against Defendants Talman Harris, William Scholander, Victor Alfaya, and Kona Jones Barbera ("Memorandum of Law"), and the December 14, 2015 Declaration of Izak Zirk de Maison (f/k/a Izak Zirk Engelbrecht) ("Engelbrecht Decl."), a true and correct copy of which is annexed hereto as Exhibit A.

15. The Memorandum of Law sets forth the Commission's arguments as to why the Court should enter default judgments against the Defaulting Defendants. The Memorandum of Law also discusses how the Complaint establishes that the Defaulting Defendants are liable

4

under the federal securities laws for each of the counts in the Amended Complaint. The Commission submits that the reasons set forth in the Memorandum of Law demonstrate that the Order to Show Cause should be issued and that default judgments should be entered against the Defaulting Defendants.

16. The Engelbrecht Declaration describes two of the sophisticated fraudulent schemes that Engelbrecht orchestrated and that are subjects of the Amended Complaint. The first scheme described in the Engelbrecht Declaration concerned the securities of Lenco Mobile Inc. ("Lenco Mobile"). *See* Ex. A ¶¶ 2-8. In that scheme, Engelbrecht illegally sold shares of Lenco Mobile into the public market by inducing others to place buy orders in their customers' accounts with the purpose of matching trades with Engelbrecht's sales. Harris and Scholander participated in that scheme. *See id.* The second scheme described in the Engelbrecht Declaration concerned the securities of Lustros Inc. ("Lustros"). *See id.* ¶¶ 9-14. In that scheme, Engelbrecht and his confederates paid unregistered individuals undisclosed commissions for causing investors to buy shares of Lustros in purported private placements and in the open market. Alfaya and Barbera participated in that scheme. *See id.*

17. The Commission seeks the following relief in its proposed default judgments against the Defaulting Defendants: (1) permanent injunctions against future violations of the securities laws; (2) disgorgement of their ill-gotten gains, plus prejudgment interest on those amounts; (3) civil penalties; and (4) penny stock bars. These forms of relief are discussed in detail below.

*Permanent Injunctions*

18. The Complaint seeks injunctive relief, permanently enjoining the Defaulting Defendants from further violations of the federal securities laws that they violated. The

Memorandum of Law sets forth the Commission's arguments as to why permanent injunctions against the Defendants are appropriate here.

19. The Defaulting Defendants' conduct in this case was willful, deceptive, and not an isolated occurrence. Harris and Scholander conducted the Lenco Mobile scheme with Engelbrecht (as described above in paragraph 16) for more than three years, from approximately February 2008 until approximately June 2011. *See* Ex. A ¶¶ 2-5. Moreover, they concealed the scheme from their customers because they knew their customers would never have agreed to the share purchases if the customers knew about the commissions Engelbrecht was paying them. *See id.* ¶ 5. Finally, they sought to conceal the scheme by directing Engelbrecht to make the commission payments to third parties so as not to create a paper trail that regulators and legal authorities could use to implicate them in the scheme. *See id.* ¶¶ 6-7. Alfaya and Barbera conducted the Lustros scheme with Engelbrecht (as described above in paragraph 16) for one and half years, from approximately June 2012 until approximately January 2014. *See id.* ¶¶ 9-10. They too concealed the scheme from the investors they solicited because they knew the investors would never have agreed to the share purchases if the investors knew about the commissions Engelbrecht was paying them through Kuhn. *See id.* ¶¶ 11-13.

***Disgorgement***

20. The Complaint seeks disgorgement of the Defaulting Defendants' ill-gotten gains along with prejudgment interest. The Memorandum of Law sets forth the Commission's arguments as to why disgorgement is appropriate in this case and the proposed amounts of disgorgement.

21. The Commission submits in the Memorandum of Law that Harris should disgorge the $775,104 of ill-gotten gains representing the sums that Engelbrecht paid him in exchange for

6

his buying shares of Lenco in the accounts of his customers over which he exercised discretionary authority. Attached hereto as Exhibit 14 is a true and correct copy of a spreadsheet prepared for Engelbrecht that provides an accounting (the "Undisclosed Engelbrecht Commissions Spreadsheet") of, among others, 29 undisclosed commission payments totaling $775,104 that he made to Harris between February 13, 2008 and November 12, 2009. Attached hereto as Exhibit 15 are true and correct copies of wire confirmations and bank statements evidencing 27 of the commission payments.[1]

22. The Commission submits in the Memorandum of Law that Scholander should disgorge the $225,880 of ill-gotten gains representing the sums that Engelbrecht paid him in exchange for his buying shares of Lenco in the accounts of his customers over which he exercised discretionary authority. The Undisclosed Engelbrecht Commissions Spreadsheet provides an accounting of, among others, 19 undisclosed commission payments totaling $225,880 that Engelbrecht made to Scholander between February 13, 2008 and November 12, 2009. *See* Ex. 14. Attached hereto as Exhibit 16 are true and correct copies of wire confirmations, bank statements, and internal accounting documents evidencing 18 of the commission payments.[2]

23. The Commission submits in the Memorandum of Law that Alfaya should disgorge the $136,540 of ill-gotten gains representing the undisclosed commissions that Kieran

---

[1] As is set forth in the Undisclosed Engelbrecht Commissions Spreadsheet, one of the 29 payments to Harris was a cash payment of $3,500 made on February 29, 2008. The Commission has been unable to obtain any other documentary evidence of that cash payment, but it is reflected in the Undisclosed Engelbrecht Commissions Spreadsheet. *See* Ex. 14. In addition, one of the 29 payments to Harris was a wire for $4,000 sent on January 13, 2009. The Commission has been unable to obtain a wire confirmation for that transaction, but it is reflected in the Undisclosed Engelbrecht Commissions Spreadsheet. *See id*.

[2] As is set forth in the Undisclosed Engelbrecht Commissions Spreadsheet, one of the 29 payments to Scholander was a cash payment of $3,500 made on February 29, 2008. *See* Ex. 14. The Commission has been unable to obtain any other documentary evidence of that cash payment, but it is reflected in the Undisclosed Engelbrecht Commissions Spreadsheet. *See id.*

7

Kuhn paid him in exchange for brokering shares of Lustros to unsuspecting investors. Attached hereto as Exhibit 17 are true and correct copies of 46 checks totaling the $136,540 in undisclosed commissions that Kuhn paid to Alfaya (through Small Cap Resource Corp.) between May 18, 2012 and March 15, 2013. In addition, in January 2013 Kuhn had an employee prepare two spreadsheets for him that provide an accounting of the undisclosed commissions paid to Alfaya and others in 2012 (the "Undisclosed Kuhn Commissions Spreadsheets"). Although the Undisclosed Kuhn Commissions Spreadsheets do not reflect the specific dates of payment to Alfaya in 2012, they do reflect the amounts of payments, many of which are reflected in the 46 checks attached hereto as Exhibit 17. Attached hereto as Exhibit 18 are true and correct copies of the Undisclosed Kuhn Commissions Spreadsheets.

24. The Commission submits in the Memorandum of Law that Barbera should disgorge the $252,520 of ill-gotten gains representing the undisclosed commissions that Kuhn paid him in exchange for brokering shares of Lustros to unsuspecting investors. Attached hereto as Exhibit 19 are true and correct copies of 32 checks totaling the $252,520 in undisclosed commissions that Kuhn paid to Barbera's nominee, Neoterra Enterprises (in his own name and through Small Cap Resource Corp.),[3] between May 18, 2012 and January 18, 2013. The Undisclosed Kuhn Commissions Spreadsheets also reflect many of the payments Kuhn made to Barbera in 2012. Although the Undisclosed Kuhn Commissions Spreadsheets do not reflect the specific dates of payment to Barbera in 2012, they do reflect the amounts of payments, many of which are reflected in the 32 checks attached hereto as Exhibit 19.

25. Attached to this declaration as Exhibit 20 is documentation of the prejudgment interest calculation for each amount described above for which the Commission is seeking

---

[3] The Undisclosed Kuhn Commissions Spreadsheets refer to "Kona Barbera/Neoterra Enterprises" as one payee. *See* Ex. 18.

8

disgorgement. The Commission's calculation computes prejudgment interest from the date of last payment to each of the Defaulting Defendants. The Commission uses the rate of interest that the Internal Revenue Service uses to calculate underpayment penalties, which is currently defined as the Federal short term rate plus three percentage points. These streams and the related prejudgment interest amounts as calculated using the Division of Enforcement's Prejudgment Interest Calculator assuming a payoff date of December 18, 2015 are summarized below:

| **Defaulting Defendant** | **Disgorgement Amount** | **Prejudgment Interest** | **Period Prejudgment Interest Accrued** |
|---|---|---|---|
| Harris | $775,104.00 | $166,955.41 | 2/13/08-11/12/09 |
| Scholander | $225,880.00 | $48,653.97 | 2/13/08-11/12/09 |
| Alfaya | $136,540.00 | $11,336.81 | 5/18/2012-3/15/2013 |
| Barbera | $252,520.00 | $22,292.79 | 5/18/2012-1/18/2013 |

26. In sum, the Commission seeks disgorgement from:

- Harris in the amount of $942,059.41 (the undisclosed commissions of $775,104.00 plus prejudgment interest in the amount of $166,955.41);

- Scholander in the amount of $274,533.97 (the undisclosed commissions of $225,880.00 plus prejudgment interest in the amount of $48,653.97);

- Alfaya in the amount of $147,876.81 (the undisclosed commissions of $136,540.00 plus prejudgment interest in the amount of $11,336.81); and

- Barbera in the amount of $274,812.79 (the undisclosed commissions of $252,520.00 plus prejudgment interest in the amount of $22,292.79).

***Civil Money Penalties***

27. The Complaint seeks civil money penalties against the Defaulting Defendants. The Memorandum of Law sets forth the Commission's arguments as to why third-tier civil penalties are appropriate here.

*Penny Stock Bars*

28.     The Complaint seeks penny stock bars against Defendants. The Memorandum of Law sets forth the Commission's arguments as to why penny stock bars are appropriate here.

**Legal Authority for Why an Inquest Into Damages Would Be Unnecessary**

29.     Based on the arguments made in the Memorandum of Law, the Commission respectfully submits that record before the Court makes an evidentiary hearing on the relief sought by the Commission unnecessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2015
New York, New York

_____
John O. Enright