MANDATE

18-2564
*SEC v. de Maison*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of August, two thousand nineteen.

PRESENT:

    **PETER W. HALL,**
    **DEBRA ANN LIVINGSTON,**
        *Circuit Judges,*
    **CLAIRE R. KELLY,**[*]
        *Judge.*

---

SECURITIES AND EXCHANGE COMMISSION,

    *Plaintiff-Appellee,*

v.                                                                             No. 18-2564

ANGELIQUE DE MAISON,

    *Defendant-Cross Defendant-Appellant,*

PETER VOUTSAS, RONALD LOSHIN,

    *Defendants,*

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

1

MANDATE ISSUED ON 11/26/2019

JASON COPE, IZAK ZIRK DE MAISON, FKA IZAK ZIRK ENGELBRECHT, LOUIS MASTROMATTEO, TRISH MALONE, KIERAN T. KUHN, GEPCO, LTD., SUNATCO LTD., SUPRAFIN LTD., WORLDBRIDGE PARTNERS, TRAVERSE INTERNATIONAL, SMALL CAP RESOURCE CORP., GREGORY GOLDSTEIN, STEPHEN WILSHINSKY, TALMAN HARRIS, WILLIAM SCHOLANDER, JUSTIN ESPOSITO, KONA JONES BARBERA, VICTOR ALFAYA,

        *Defendants-Cross Defendants*,

JACK TAGLIAFERRO,

        *Defendant-Cross Claimant-Cross Defendant*.

| | |
|---|---|
| Appearing for *Appellee*: | JEFFREY BRUCE COOPERSMITH (Lauren B. Rainwater, *on the brief*), Davis Wright Tremaine LLP, Seattle, WA. |
| Appearing for *Appellant*: | ROBERT B. STEBBINS, General Counsel (Michael A. Conley, Solictor, Theodore Weiman, Senior Litigation Counsel, John B. Capehart, Senior Counsel), U.S. Securities and Exchange Commission, Washington, DC. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 8, 2018, is **AFFIRMED**.

Defendant-Cross Defendant-Appellant Angelique de Maison appeals from a judgment of the district court entered against her following a consent agreement with Plaintiff-Appellee United States Securities and Exchange Commission ("SEC"). The

2

district court ordered de Maison to disgorge $4,240,049.30 in ill-gotten gains, plus prejudgment interest, and imposed a third-tier civil penalty of $4,240,049.30. De Maison appeals, principally arguing that the district court was without authority to impose disgorgement following the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). De Maison also presses various challenges to the district court's remedies calculations. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"Once the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies . . . ." *SEC v. Frohling*, 851 F.3d 132, 138 (2d Cir. 2016) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996)). "The court's choice of remedies is reviewed for abuse of discretion." *Id.* at 139. "Under this standard, we will reverse only if we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *SEC v. Rajaratnam*, 918 F.3d 36, 41 (2d Cir. 2019) (quoting *SEC v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013)).

I.

The meat of de Maison's argument on appeal is grounded in *Kokesh*.[1] She argues that disgorgement has historically been rooted in equity. *See, e.g., SEC v. Tex. Gulf Sulfur*

---

[1] The SEC insists that de Maison cannot raise a challenge to the fact of disgorgement, as opposed to the disgorgement amount, because of her consent agreement. We need not resolve this issue because we conclude that de Maison's challenge is currently foreclosed.

3

*Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971). She further contends that equitable relief does not include penalties. *See Tull v. United States*, 481 U.S. 412, 422 (1987). Finally, de Maison insists that *Kokesh* must be read as holding that disgorgement in the securities enforcement context is always a penalty. *See Kokesh*, 137 S. Ct. at 1645. Therefore, according to de Maison, disgorgement is no longer an authorized remedy.

Nonetheless, "[i]t is a longstanding rule of our Circuit that a three-judge panel is bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by the Supreme Court." *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016). Although an exception to this rule is recognized "where an intervening Supreme Court decision casts doubt on the prior ruling" such that the intervening decision has "'broke[n] the link . . . on which we premised our [prior] decision' or 'undermine[d] [an] assumption' of that decision," *id.* (alterations in original) (quoting *Finkel v. Stratton Corp.*, 962 F.2d 169, 174–75 (2d Cir. 1992); *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 274 (2d Cir. 2005)), we cannot agree with de Maison that the Supreme Court in *Kokesh* implicitly did what it *explicitly* said it was not doing. *See Kokesh*, 137 S. Ct. at 1642 n.3 ("Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context. The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period.") We conclude *Kokesh* does not constitute an intervening decision

4

such that our precedent on disgorgement in SEC enforcement proceedings is disturbed. De Maison's argument concerning *Kokesh* must therefore await consideration by this Court en banc or by the Supreme Court.

II.

De Maison next challenges the district court's calculation of the amount of disgorgement. "It is well established that district courts have broad discretion to impose disgorgement liability and that liability should fall upon the wrongdoer in cases of uncertainty." *SEC v. Contorinis*, 743 F.3d 296, 304–05 (2d Cir. 2014) (citation omitted). "The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation; any risk of uncertainty in calculating disgorgement should fall upon the wrongdoer whose illegal conduct created that uncertainty." *Id.* at 305 (cleaned up) (quoting *First Jersey*, 101 F.3d at 1475).

De Maison points out that (1) the SEC alleged that only some of the proceeds from the illegal securities sales were used by de Maison to pay personal expenses, (2) that $3.4 million of the proceeds from the sale of Casablanca securities actually went to Casablanca, (3) that some of the investors were repaid, and (4) that Engelbrecht had sole control over some of the proceeds. These arguments are a collective distraction on many levels. In the main, de Maison simply confuses what makes the gains in question "ill-gotten" in the first place. It is not about where the money went, it is about the fact that she was selling unregistered securities and was not a registered broker-dealer. *See* 15 U.S.C. §§ 77e(a),

5

(c), 78o(a).  That is, the taint of "ill-gotten" is a result of the securities being sold at all by de Maison, not a result of her subsequent use of the funds.

What is more, de Maison's argument that she should be forced to disgorge only the amounts by which she personally profited finds no support in our jurisprudence.  As this Court explained in *Contorinis*, this argument

> seeks to undermine [the district court's] discretion by conflating a central, well-established principle in disgorgement law—that the court may [] exercise its equitable power only over property causally related to the wrongdoing—with the proposition, unsupported in our case law, that the wrongdoer need disgorge only the financial benefit that accrues to [her] personally.

*Contorinis*, 743 F.3d at 305 (internal quotation marks and citation omitted).[2]

### III.

Finally, de Maison insists that no prejudgment interest was warranted because disgorgement is not an available remedy and, even if it were, the district court failed to account for the fact that its asset-freeze order covered *all* of de Maison's assets.[3]  The first

---

[2] De Maison also challenges the use of the full amount of investor loss to calculate her third-tier civil penalty.  Although the amount of a civil penalty, unlike the amount of disgorgement, is constrained by the statutory language authorizing the penalty, *see Rajaratnam*, 918 F.3d at 42–43, we nonetheless conclude that this challenge fails largely for the same reason as does de Maison's challenge to the disgorgement amount, *see SEC v. Razmilovic*, 783 F.3d 14, 38 (2d Cir. 2013) (noting, in that case, that the statutory maximum civil penalty measured by "gross amount of pecuniary gain" was equal to the "disgorgeable gain").  And de Maison's argument that the district court failed to give adequate consideration to mitigating factors when calculating the civil penalty is belied by the record.

[3] The district court did exclude from prejudgment interest $612,551.64 in funds that were explicitly frozen.

argument fails because de Maison's *Kokesh* argument is not cognizable. The second is frivolous. "[I]t is within the discretion of a court to award prejudgment interest on the disgorgement amount for the period during which a defendant had the use of [her] illegal profits," and an award of prejudgment interest covering funds subject to an asset freeze "would be inappropriate" because "the defendant has already, for that period, been denied the use of those assets." *SEC v. Razmilovic*, 738 F.3d 14, 36 (2d Cir. 2013). While this is all well and good, de Maison does not identify any assets the benefit of which she was denied because of the asset-freeze order.[4]

We have considered de Maison's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[4] De Maison attempts to argue that, because her bank accounts were frozen, she was somehow unable to accept rent on her properties and was thereby denied the benefit of those properties (and somehow the SEC was responsible for millions in lost equity, to boot). The record simply does not support this allegation.

7